IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF DELAWARE

| | | |
|---|---|---|
| TECHNOPROBE S.P.A., | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | C.A. No. 23-842-JCG |
| | ) | |
| FORMFACTOR, INC., | ) | |
| | ) | |
| Defendant. | ) | |

**PLAINTIFF TECHNOPROBE S.P.A.'S OPPOSITION TO
DEFENDANT FORMFACTOR, INC.'S PARTIAL MOTION TO DISMISS**

OF COUNSEL:
Mark Sommers
Houtan K. Esfahani
John C. Paul
Jennifer E. Fried
Ahbay A. Watwe
Kelly S. Horn
Alexander E. Harding
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Dated: December 6, 2023

Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
1105 North Market Street, 12th Floor
Wilmington, DE 19801
(302) 298-0700
arussell@shawkeller.com
*Attorneys for Plaintiff Technoprobe S.p.A.*

# TABLE OF CONTENTS

**Page**

I.  NATURE AND STAGE OF PROCEEDINGS ..................................................................1

II.  SUMMARY OF THE ARGUMENT ..........................................................................1

III.  STATEMENT OF FACTS .........................................................................................3

IV.  ARGUMENT ............................................................................................................5

    A.  Technoprobe States a Plausible Claim for Induced and Willful Infringement.......................................................................................................5

        1.  The Original and Amended Complaints Each Provide Pre-Suit and Post-Suit Knowledge to Support the Willful and Induced Infringement Claims ........................................................................ 6

        2.  The Remaining Factual Allegations in the Amended Complaint Support an Inference of Pre-Suit Knowledge ........................................... 10

        3.  Technoprobe Is Not Required to Plead Other Egregious Acts ................ 14

    B.  The Amended Complaint Sufficiently Pleads that FormFactor Made Literally False CCC Claims ..................................................................................15

        1.  The Meaning of the Disputed Claims Must Be Determined by the Factfinder .......................................................................................... 16

        2.  Technoprobe's Literal Falsity Claim Has Been Properly Pled................. 18

V.  CONCLUSION.........................................................................................................20

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Federal Cases**

*3M Innovative Props. Co. v. Dupont Dow Elastomers LLC*,
   361 F. Supp. 2d 958 (D. Minn. 2005) ......................................................................17

*Ashcroft v. Iqbal*,
   556 U.S. 662 (2009) ...................................................................................................1, 11

*Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*,
   829 F. Supp. 2d 802 (D. Minn. 2011) ......................................................................17

*Bell Atl. Corp. v. Twombly*,
   550 U.S. 544 (2007) ...................................................................................................16

*BillJCo, LLC v. Apple Inc.*,
   583 F. Supp. 3d 769 (W.D. Tex. 2022) ....................................................................10

*Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*,
   No. 19-CV-12533-WGY, 2020 WL 2079422 (D. Mass. Apr. 30, 2020) ...............14

*Bos. Sci. Corp. v. Nevro Corp.*,
   560 F. Supp. 3d 837 (D. Del. 2021) ..........................................................................8

*Castrol Inc. v. Pennzoil Co.*,
   987 F.2d 939 (3d Cir. 1993) ......................................................................................19

*Checker CAB Phila., Inc. v. Uber Techs., Inc.*,
   No. 14-7265, 2016 WL 950934 (E.D. Pa. Mar. 7, 2016), *aff'd*, 689 F. App'x
   707 (3d Cir. 2017) .....................................................................................................20

*Cleveland Med. Devices Inc. v. ResMed Inc.*,
   No. 22-794-GBW, 2023 WL 6389628 (D. Del. Oct. 2, 2023) .................................8

*Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*,
   228 F.3d 24 (1st Cir. 2000)......................................................................................17, 20

*Clorox Co. v. Reckitt Benckiser Grp. PLC*,
   398 F. Supp. 3d 623 (N.D. Cal. 2019) .....................................................................16

*Clouding IP, LLC v. Amazon.com, Inc.*,
   Nos. 12-641-LPS, -642-LPS, -675-LPS, 2013 WL 2293452 (D. Del. May 24,
   2013) .......................................................................................................................6, 8

*Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*,
   No. 2:15-cv-00011-RSP, 2017 WL 5137401 (E.D. Tex. Nov. 4, 2017), *rev'd
   on other grounds*, 955 F.3d 1317 (Fed. Cir. 2020) ..................................................10

*Fowler v. UPMC Shadyside*,
   578 F.3d 203 (3d Cir. 2009).................................................................................1, 11

*Groove Digital, Inc. v. Jam City, Inc.*,
   No. 1:18-cv-01331-RGA, 2019 WL 351254 (D. Del. Jan. 29, 2019) .......................7

*Guardant Health, Inc. v. Found. Med., Inc.*,
   No. 17-1616-LPS-CJB, 2020 WL 5994155 (D. Del. Oct. 9, 2020) .........................15

*Halo Elecs., Inc. v. Pulse Elecs., Inc.*,
   579 U.S. 93 (2016)....................................................................................................9

*ICON Health & Fitness, Inc. v. Tonal Sys., Inc.*,
   No. 21-652-LPS-CJB, 2022 WL 611249 (D. Del. Feb. 7, 2022) ..............................6

*Intell. Ventures I LLC v. Toshiba Corp.*,
   66 F. Supp. 3d 495 (D. Del. 2014)..........................................................................13

*IOENGINE, LLC v. PayPal Holdings, Inc.*,
   Nos. 18-452-WCB, -826-WCB, 2019 WL 330515 (D. Del. Jan. 25, 2019)........7, 14, 15

*Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*,
   564 F. Supp. 3d 1126 (D. Utah 2021)........................................................................8

*Mentor Graphics Corp. v. EVE-USA, Inc.*,
   851 F.3d 1275 (Fed. Cir. 2017)............................................................................9, 10

*N.J. Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*,
   141 F. Supp. 3d 298 (D.N.J. 2015) ..........................................................................16

*Parks, LLC v. Tyson Foods, Inc.*,
   No. 5:15-cv-00946, 2015 WL 4545408 (E.D. Pa. July 28, 2015) ...........................17

*Phillips v. Cnty. of Allegheny*,
   515 F.3d 224 (3d Cir. 2008).....................................................................................11

*Ravgen, Inc. v. Ariosa Diagnostics, Inc.*,
   No. 20-1646-RGA-JLH, 2021 WL 3526178 (D. Del. Aug. 11, 2021).............7, 11, 13

*Ricoh Co. v. Quanta Comput. Inc.*,
   550 F.3d 1325 (Fed. Cir. 2008)................................................................................11

*In re Seagate Tech., LLC,*
    497 F.3d 1360 (Fed. Cir. 2007), *abrogated on other grounds by Halo Elecs.,*
    *Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016) ....................................................9

*Simplivity Corp. v. Springpath, Inc.*,
    No. 4:15-13345-TSH, 2016 WL 5388951 (D. Mass. July 15, 2016) ....................................14

*SoftView LLC v. Apple Inc.*,
    No. 10-389-LPS, 2012 WL 3061027 (D. Del. July 26, 2012) ....................................7

*Synopsys, Inc. v. Magma Design Automation*,
    C.A. No. 05-701-GMS, 2006 WL 1452803 (D. Del. May 25, 2006) ....................................16

*Telecomm Innovations, LLC v. Ricoh Co.*,
    966 F. Supp. 2d 390 (D. Del. 2013) ....................................7

*Time Warner Cable, Inc. v. DIRECTV, Inc.*,
    497 F.3d 144 (2d Cir. 2007) ....................................20

*U.S. Healthcare, Inc. v. Blue Cross*,
    898 F.2d 914 (3d Cir. 1990) ....................................17

*VLSI Tech. LLC v. Intel Corp.*,
    No. 18-966-CFC, 2019 WL 1349468 (D. Del. Mar. 26, 2019) ....................................7

**Federal Statutes**

35 U.S.C. § 284 ....................................12

**Rules**

Fed. R. Civ. P. 8(a)(2) ....................................16

Fed. R. Civ. P. 9(b) ....................................16

Fed. R. Civ. P. 12 ....................................18

## I.   NATURE AND STAGE OF PROCEEDINGS

Defendant FormFactor's present partial motion to dismiss stems from an action Plaintiff Technoprobe originally filed on August 4, 2023 ("Original Complaint") for FormFactor's infringement of U.S. Patent No. 11,035,885 ("the '885 patent") and literally false and misleading claims regarding the performance of FormFactor's probe cards versus the probe cards of FormFactor's competitors, including Technoprobe. D.I. 1. On September 27, 2023, FormFactor moved to dismiss Technoprobe's claims for induced and willful patent infringement (Count I) and Technoprobe's false advertising claim in its entirety (Count II). D.I. 9. On October 11, 2023, Technoprobe filed an amended Complaint ("Amended Complaint"), with comprehensive allegations regarding its underlying patent infringement and false advertising claims, mooting FormFactor's September 27 motion to dismiss. D.I. 13. On October 18, 2023, the Court entered an Order denying FormFactor's motion as moot. D.I. 15. On November 8, 2023, FormFactor moved to dismiss the induced and willful patent infringement portions of Count I and the literal falsity portions of Count II as alleged in Technoprobe's Amended Complaint. D.I. 17.

## II.   SUMMARY OF THE ARGUMENT

For FormFactor's motion to dismiss at the pleading stage, this Court considers the facts alleged in the Amended Complaint together as true and draws all reasonable inferences in favor of Plaintiff Technoprobe and determines whether Technoprobe "has 'a plausible claim for relief'". *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). FormFactor's motion, however, asks the Court to do otherwise and should be denied.

FormFactor's motion to dismiss the induced and willful infringement claims is premised on three flawed legal theories. First, FormFactor alleges that Technoprobe has not adequately pled that FormFactor had knowledge of its infringement of the '885 patent—despite indisputably

obtaining this knowledge when Technoprobe filed its Original Complaint in this case. FormFactor simply ignores the holdings in an overwhelming majority of cases in this district finding that the filing of a complaint provides a defendant with sufficient knowledge of an asserted patent to support a pleading of both induced and willful infringement. *See infra* Section IV.A. And it overlooks that the Federal Circuit has allowed willful infringement claims to proceed in cases where knowledge of infringement was obtained after or concurrent with the commencement of suit, consistent with the majority rule in this district. *Id.* Second, FormFactor contends it lacked pre-suit knowledge by attacking each factual allegation in the Amended Complaint individually, never considering the inferences that can be drawn from the factual allegations taken as a whole. But this Court considers the facts together and draws all reasonable inferences in favor of Technoprobe, the non-movant, at the pleading stage. *See infra* Section IV.A.1-.2. Third, FormFactor seeks to impose a higher pleading standard for willful infringement claims, under which additional facts of egregious conduct must be pled than is supported by the caselaw. *See infra* Section IV.A.3.

FormFactor's motion to dismiss Technoprobe's literally false advertising claim is likewise based on flawed premises. Contrary to FormFactor's contention that Technoprobe "fails to sufficiently plead" that FormFactor's claims are literally false (D.I. 18 ("Motion"), 17), Technoprobe devotes no fewer than *nine pages consisting of twenty paragraphs* to spell out precisely which claims are literally false and on what grounds. Amended Complaint, ¶¶ 42-61. Such exhaustive pleading is far more than "sufficient" at this early stage of the case. It is black-letter law that this Court need only consider whether Technoprobe's Amended Complaint meets the low bar for *alleging* literal falsity, and the answer to that question is a resounding yes.

FormFactor further urges this Court to adopt the unfounded theory that its advertising cannot be false because its comparative claims do not expressly reference Technoprobe—its closest competitor—*by name*. Yet FormFactor's express naming theory is refuted by core precedent, undercut by the claims' comparative context, and most importantly at this stage, unsuited for a pre-trial let alone pre-discovery motion.

While FormFactor is free to advance its flawed legal theories at trial, determination of the meaning of the disputed claims at issue must rest on discovery (fact and expert) directly addressing how such claims are understood by the relevant universe of *probe card consumers*, whose opinions must guide that case-threshold question. How probe card customers construe the disputed graphs and claims is an inherently fact-intensive question. Any determination of literal falsity requires gauging how the claims are understood by those consumers who purchase and use probe cards to test the performance of electronic chips. Absent fact-finding and discovery, the Court will be unable to appreciate how that relevant consumer universe views the disputed claims.

## III.    STATEMENT OF FACTS

The parties in this case are the two leading probe card manufacturers. Amended Complaint, ¶¶ 20, 25. Probe cards are used to test and characterize the performance of electronic chips such as central processing units (or "CPUs") "when the chip is still on the wafer or before the chip is individually packaged." *Id.*, ¶ 15. In testing, the probes of these probe cards carry electric current, and the total amount of current a probe can safely carry is referred to as the probe's current carrying capability ("CCC"). *Id.*, ¶¶ 2, 27. The CCC of the probes on a probe card "is material to the function of probe cards and material to those who purchase and use probe cards." *Id.*, ¶ 42.

Both parties participated in a two-day conference—SWTest 2023—held from June 5 to June 7, 2023, at Omni La Costa in Carlsbad, California. *Id.*, ¶¶ 25-31. SWTest 2023 was attended by more than 500 members of the probe card testing industry, including consumers of probe cards,

3

such as Qualcomm, Advanced Micro Devices ("AMD"), Taiwan Semiconductor Manufacturing Company ("TSMC"), Texas Instruments, and others. *Id.*, ¶ 25. At the conference, Technoprobe presented its new "Technoprobe Patented solution," a metallized guide plate technology that is the subject of the '885 patent and that "results in an increased CCC of probes." *Id.*, ¶¶ 26-27 (quoting Ex. H at 22). FormFactor personnel were present at Technoprobe's presentation. *Id.*, ¶ 27.

At the conference, FormFactor personnel (including, at least, David Raschko and Hadi Najar) gave their own public presentation promoting FormFactor's metallized guide plate to conference attendees. *Id.*, ¶ 29. At least one or more attendees from probe card consumers, such as Qualcomm and/or AMD, attended FormFactor's presentation. *Id.*, ¶ 31. Technoprobe alleges that FormFactor's presentation portrayed Technoprobe's technology as its own. *Id.*, ¶ 29.

In its Original and Amended Complaints, Technoprobe alleges that FormFactor's probe cards infringe on Technoprobe's '885 patent. Technoprobe's Amended Complaint alleges that FormFactor has had knowledge of the '885 patent and continued infringement despite that knowledge since the filing of the Original Complaint on August 4, 2023. *Id.*, ¶ 80. The Amended Complaint also alleges that Technoprobe's SWTest 2023 presentation, and facts surrounding the presentation—such as FormFactor's attendance at Technoprobe's presentation—show knowledge and willful infringement of the '885 patent. *Id.*, ¶¶ 75, 79.

Technoprobe's Amended Complaint also alleges that FormFactor's SWTest 2023 presentation featured claims that are false and misleading under the Lanham Act. The Amended Complaint contains detailed allegations on each claim in its context, flagging variables including the color of the bars in FormFactor's bar graphs, the wording of FormFactor's captions, and other contextual details. *E.g.*, *id.*, ¶¶ 43-45. As alleged, Technoprobe and FormFactor are the leading

producers of probe cards (*id.*, ¶ 20), and Technoprobe is FormFactor's "direct," "largest," and "closest" competitor (*see id.*, ¶¶ 3, 7, 20, 31, 34, 42-45, 51, 53, 60, 86-88).

As alleged in the Amended Complaint, FormFactor's SWTest 2023 presentation was also publicly posted on FormFactor's consumer-facing website. As further alleged, in addition to the presentation itself, FormFactor on its website exaggerates the comparative advantages of its technology and suggests that its technology can be used "in the probe card to maximize CCC . . . to maintain probe integrity in a high-stress, high-current environment." *Id.*, ¶¶ 32-33 (citation omitted). As alleged, FormFactor's website, which features the SWTest 2023 presentation, is designed to promote and solicit sales of FormFactor's probe cards instead of the probe cards of other probe card competitors, including Technoprobe. *Id.*, ¶ 34.

## IV.    ARGUMENT

### A.    Technoprobe States a Plausible Claim for Induced and Willful Infringement

Technoprobe has properly pled induced and willful infringement consistent with the notice pleading standard. At the outset, FormFactor does not dispute that Technoprobe has adequately pled direct infringement or how FormFactor promotes and encourages the use of the accused features by others. Instead, FormFactor's attack on Technoprobe's willful and induced infringement claims is solely based on its allegation that the Amended Complaint does not support an inference that FormFactor had pre- or post-suit knowledge of infringement of the '885 patent. Motion, 1. This challenge fails at the pleading stage because it can be inferred that FormFactor acquired pre- and post-suit knowledge of infringement of the '885 patent at least based on (1) the Original and Amended Complaints themselves, as well as the Amended Complaint's identification of the facts surrounding the filing and service of the Original Complaint; and (2) the circumstantial

evidence set forth in the Amended Complaint, taken collectively and in context, supporting an inference of FormFactor's pre-suit knowledge.

> **1.     The Original and Amended Complaints Each Provide Pre-Suit and Post-Suit Knowledge to Support the Willful and Induced Infringement Claims**

FormFactor unequivocally knows at least the details of its infringement of the '885 patent and has known them since it was served with the Original Complaint on August 4, 2023, two months before the filing of the operative Amended Complaint on October 11, 2023. *See* D.I. 1; 13. Yet FormFactor attempts to avoid the consequences of its knowing induced and willful infringement by wrongly alleging that "[t]he Amended Complaint cannot rely upon the filing or service of the Original Complaint to establish post-suit knowledge of infringement for purposes of willful or induced infringement." Motion, 13. FormFactor's position is unsupported.

This Circuit has held that the service of a mooted original complaint acts like "a pre-complaint notice letter" and provides the requisite pre-filing knowledge for willful and induced infringement for a later-filed amended complaint. *Clouding IP, LLC v. Amazon.com, Inc.*, Nos. 12-641-LPS, -642-LPS, -675-LPS, 2013 WL 2293452, at *4 (D. Del. May 24, 2013) (explaining that, "[f]or purposes of pleading willful infringement, there appears to be little practical difference between a pre-complaint notice letter informing a defendant about a patentee's allegation of infringement and a subsequently-super[s]eded original complaint formally alleging infringement"); *ICON Health & Fitness, Inc. v. Tonal Sys., Inc.*, No. 21-652-LPS-CJB, 2022 WL 611249, at *3 n.5 (D. Del. Feb. 7, 2022) (noting that "the Court does not see why an original complaint, or facts relating to its receipt, must necessarily be walled off from being a relevant piece of fact evidence in a case"). Technoprobe's Original Complaint acted as a notice letter to the current Amended Complaint and provides the requisite pre- and post-filing knowledge of

FormFactor's infringement. FormFactor cites no authority to the contrary, and its motion fails for that reason alone.

In addition, the overwhelming weight of authority in this District finds that pleading knowledge for willfulness and inducement based on the filing of *any* complaint—original or amended—is sufficient to state a claim for relief. *See, e.g.*, *SoftView LLC v. Apple Inc.*, C.A. No. 10-389-LPS, 2012 WL 3061027, at *7 (D. Del. July 26, 2012) (finding that "the filing of a complaint is sufficient to provide knowledge of the patents-in-suit for purposes of stating a claim for indirect infringement occurring after the filing date"); *IOENGINE, LLC v. PayPal Holdings, Inc.*, C.A. No. 18-452-WCB, 2019 WL 330515, at *7 (D. Del. Jan. 25, 2019) (finding that, "[w]ith respect to the allegations of post-suit willfulness, knowledge is a given" at the pleading stage); *Telecomm Innovations, LLC v. Ricoh Co.*, 966 F. Supp. 2d 390, 394 (D. Del. 2013) (finding post-suit knowledge at the pleading stage because "a plaintiff's filing (and a defendant's receipt) of the complaint **are** facts that establish such knowledge—at least as of the date of filing" (citation omitted)); *Ravgen, Inc. v. Ariosa Diagnostics, Inc.*, No. 20-1646-RGA-JLH, 2021 WL 3526178, at *4 (D. Del. Aug. 11, 2021) ("agree[ing] with Judge Bryson that if a defendant is on notice of a patent and the allegations of the infringement as a result of [the] filing of a pleading, there is no reason it should not be answerable for willful infringement after that date" (second alteration in original)); *Groove Digital, Inc. v. Jam City, Inc.*, No. 1:18-cv-01331-RGA, 2019 WL 351254, at *4 (D. Del. Jan. 29, 2019) (finding that "filing of the Complaint is sufficient to establish the requisite knowledge for post-filing indirect infringement liability").

FormFactor attempts to dismiss this heavy weight of jurisprudence as merely "some 'conflicting authority.'" Motion, 14 (citation omitted). But FormFactor's motion relies on a few isolated cases that represent a minority view. *See VLSI Tech. LLC v. Intel Corp.*, No. 18-966-CFC,

7

2019 WL 1349468, at *2 (D. Del. Mar. 26, 2019) (setting forth the view that "the complaint itself cannot serve as the basis for a defendant's actionable knowledge" without citing to any authority); *Cleveland Med. Devices Inc. v. ResMed Inc.*, No. 22-794-GBW, 2023 WL 6389628, at *6 (D. Del. Oct. 2, 2023) (adopting the view from *VLSI* without further analysis). These cases also did not involve, as in this case, an original complaint *preceding* an amended complaint and evidencing knowledge, at a minimum, in the period between the filing of the Original and Amended Complaints. *See, e.g.*, *Longhorn Vaccines & Diagnostics, LLC v. Spectrum Sols. LLC*, 564 F. Supp. 3d 1126, 1148 (D. Utah 2021) (explaining that "the notice of infringement provided by the initial complaint supports an inference that any continued infringement by [defendant] since it was filed has been deliberate").

And even Judge Connolly, who originally expressed this minority view, subsequently acknowledged that it is "not without doubts" that he continues to espouse it. *See Bos. Sci. Corp. v. Nevro Corp.*, 560 F. Supp. 3d 837, 843-44 (D. Del. 2021). Such doubts are well founded because the knowledge prong of an inducement claim, for example, requires that the defendant have knowledge of the patent *when* it is infringing, conduct that in many cases continues after the filing of a complaint. Preventing a plaintiff from relying on notice provided by a complaint would also lead to inefficient and wasteful results that put form over substance, as there is little, if any, difference between a notice letter sent one day before filing a complaint and the complaint itself. *See Clouding*, 2013 WL 2293452, at *4.

FormFactor also misreads the Federal Circuit's *Seagate* decision to reach the incorrect conclusion that on the question of "whether the complaint itself can serve as the basis for a defendant's actionable knowledge in asserting a willful infringement claim, the Federal Circuit

has held that it cannot." Motion, 13-14. *Seagate* did not so hold.[1] The Federal Circuit clearly delineated its holding in the section FormFactor cites: "[W]e hold, as a general proposition, that asserting the advice of counsel defense and disclosing opinions of opinion counsel do not constitute waiver of the attorney-client privilege for communications with trial counsel." *In re Seagate Tech., LLC*, 497 F.3d 1360, 1374 (Fed. Cir. 2007), *abrogated on other grounds by Halo Elecs., Inc. v. Pulse Elecs., Inc.*, 579 U.S. 93 (2016). The Federal Circuit's holding did not reach whether a complaint can provide post-suit knowledge for willful infringement.

Moreover, the full context surrounding the quote FormFactor identified makes clear that the Federal Circuit was not speaking to whether a complaint can provide notice for post-filing willfulness. *Id.* In that section, the Court was contrasting the then-available remedies for a willfulness claim originally presented in a complaint with those for reckless conduct continuing after the complaint was filed. *Id.* This discussion, however, reflected the since overruled exacting standard for willfulness that courts previously interpreted to require pre-suit knowledge for willful infringement claims. *Id.*; *see Halo Elecs.*, 579 U.S. at 103. Yet even in this context, the *Seagate* Court  also qualified the cited dicta, explaining that "*in ordinary circumstances*, willfulness will depend on an infringer's prelitigation conduct," leaving open the possibility of relevant post-suit conduct. *In re Seagate*, 497 F.3d at 1374 (emphasis added).

FormFactor also overlooks more recent authority from the Federal Circuit that implicitly approves alleging post-suit knowledge via service of a complaint. In *Mentor Graphics*, the Federal Circuit reversed a district court decision dismissing, for failure to state a claim, an amended

---

[1] Even FormFactor implicitly acknowledges that the Federal Circuit has not conclusively settled the question of the extent to which a complaint can provide the knowledge element for induced or willful infringement, as FormFactor acknowledged an intra-district split on this question, which would be moot if the Federal Circuit already issued binding authority on this question. *See* Motion, 13-14 & n.4.

complaint that alleged post-suit knowledge based on the allegations in the original complaint. *Mentor Graphics Corp. v. EVE-USA, Inc.*, 851 F.3d 1275, 1295-96 (Fed. Cir. 2017). The Federal Circuit found that, consistent with post-*Halo* practice, the district court's dismissal wrongly prevented post-suit willfulness evidence from being considered just because the plaintiff had not sought a preliminary injunction. *Id.* While the Federal Circuit's holding did not squarely address whether a complaint can supply post-suit knowledge, the Court was aware that post-suit knowledge was being alleged via the amended complaint, and it nevertheless reversed the district court. *Id.*

Courts in multiples districts have thus interpreted *Mentor Graphics* to have implicitly endorsed the sufficiency of the practice of alleging post-suit knowledge based on allegations in a complaint. *See, e.g.*, *BillJCo, LLC v. Apple Inc.*, 583 F. Supp. 3d 769, 778-79 (W.D. Tex. 2022) (finding a approach in which "[s]erving a complaint will, in most circumstances, notify the defendant of the asserted patent and the accused conduct" to be "consonant with *Mentor Graphics*"); *Ericsson Inc. v. TCL Commc'n Tech. Holdings, Ltd.*, No. 2:15-cv-00011-RSP, 2017 WL 5137401, at *5 (E.D. Tex. Nov. 4, 2017) ("The Federal Circuit [in *Mentor Graphics*], however, has at least suggested that there is no per se rule precluding a finding of willful infringement based solely on conduct occurring after the lawsuit is filed."), *rev'd on other grounds*, 955 F.3d 1317 (Fed. Cir. 2020).

### 2. The Remaining Factual Allegations in the Amended Complaint Support an Inference of Pre-Suit Knowledge

Technoprobe's allegations that FormFactor had knowledge of infringement, at least by virtue of the factual allegations in the Original and Amended Complaints, satisfy the knowledge element and sufficiently support Technoprobe's claim for willful and induced infringement. *See supra* Section III. No more is required, and FormFactor's motion can be denied solely on this basis.

Nevertheless, the Amended Complaint includes several factual allegations that, taken collectively, support an inference of FormFactor's pre-suit knowledge of infringement. FormFactor's arguments to the contrary essentially seek to isolate the allegations from one another and raise the pleading standard—in some instances by demanding information that, without discovery, is available to only FormFactor at this stage. None of these arguments undermine Technoprobe's sufficiently pled willfulness and induced infringement claims.

First, there is "[no] probability requirement at the pleading stage," as this juncture "simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence" to support the claim. *Phillips v. Cnty. of Allegheny*, 515 F.3d 224, 234 (3d Cir. 2008) (citation omitted). This Court must accept all well-pled facts as true, view them in a light most favorable to Technoprobe, and determine whether those facts show that Technoprobe "has 'a plausible claim for relief'" on its induced and willful infringement claims. *See Fowler v. UPMC Shadyside*, 578 F.3d 203, 210-11 (3d Cir. 2009) (quoting *Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009)). Because the knowledge element of willful and induced infringement claims implicates a defendant's mental state, it is typically difficult to demonstrate with direct evidence prior to receiving discovery. It thus makes sense that at the pleading stage, indirect or circumstantial evidence, taken together, suffices to support an inference of knowledge. *See, e.g.*, *Ravgen*, 2021 WL 3526178, at *3 (expressing doubt that "any one of these facts on its own would be sufficient to permit an inference that the . . . Defendants knew that their acts infringed," but considering them collectively to "find that it is at least plausible to infer from these facts taken together that the . . . Defendants had such knowledge"); *Ricoh Co. v. Quanta Comput. Inc.*, 550 F.3d 1325, 1342 (Fed. Cir. 2008) ("[S]pecific intent may be inferred from circumstantial evidence where a defendant has both knowledge of the patent and specific intent to cause the acts constituting infringement.").

11

Technoprobe's well-pled allegations, taken collectively and in the context of the Amended Complaint, adequately support an inference that FormFactor had pre-suit knowledge of infringement of the '885 patent. Significantly, Technoprobe alleges in its Amended Complaint that "FormFactor encourages and induces probe card consumers, including its customers and others to do the same with the knowledge that FormFactor's probe cards infringe the '885 patent," and that "FormFactor has willfully infringed the '885 patent, justifying the assessment of treble damages pursuant to 35 U.S.C. § 284." Amended Complaint, ¶¶ 2, 78. The Amended Complaint alleges multiple facts in support of these allegations. For example, Technoprobe pleads that "Technoprobe and FormFactor are the two leading producers of probe cards, as Technoprobe is FormFactor's largest competitor by market share," and that "[p]robe card consumers, including those who attended SWTest 2023," are aware of this fact. *Id.*, ¶ 20. It also explains that both "Technoprobe and FormFactor" and "consumers of probe cards" attended "SWTest 2023[, which] was a two-day conference" focused on semiconductor wafer testing. *Id.*, ¶ 25. It further pleads that "Technoprobe's patented guide plate technology was publicly presented at SWTest 2023 in collaboration with AMD" in an attached presentation that "showed an embodiment of the patented guide plate technology, along with the text 'Technoprobe Patented solution.'" *Id.*, ¶ 26, Ex. H at 22. The Amended Complaint also alleges certain elements from the '885 patent showing certain features on the slide from the presentation. *Id.*, ¶¶ 39, 40. The Amended Complaint goes on to allege that "[o]ne or more representatives from FormFactor attended Technoprobe's presentation, which include[s] the slide disclosing that this technology was a 'Technoprobe Patented solution.'" *Id.*, ¶ 27; *see also id.*, ¶¶ 28, 79 (identifying FormFactor conference attendees Cameron Harker and David Raschko). These supporting facts, taken collectively, along with the allegations in the

12

Original Complaint, sufficiently support an inference of FormFactor's knowledge of infringement of the '885 patent.

FormFactor errs in arguing that each fact, on its own, does not give rise to a plausible inference of the requisite knowledge. *See* Motion, 9-13. At the pleading stage, this Court considers not the facts in isolation, but instead, whether "it is at least plausible to infer from these facts taken together that the . . . Defendant[] had such knowledge." *Ravgen*, 2021 WL 3526178, at *3. FormFactor alleges that "[a] general reference to 'Technoprobe Patented solution' in a public presentation would not give a plausible inference that FormFactor knew the '885 Patent or that FormFactor knew or should have known the infringement of this patent" in view of Technoprobe's larger patent portfolio. Motion, 9-10. Even if the presentation on its own were not enough to permit an inference of knowledge, it must be considered in view of the Amended Complaint's other allegations that (1) the parties are the two main competitors in the industry, making them more likely to monitor each other's patents; (2) that the technology on the presentation is reflected in the '885 patent; and (3) that personnel from FormFactor attended Technoprobe's presentation disclosing the patented status of Technoprobe's metallized guide plates. *See* Amended Complaint, ¶¶ 20, 26-27.

The present facts are also easily distinguishable from those in *Intellectual Ventures*. There, the plaintiffs' barebones factual allegation was that "defendants 'had pre-suit knowledge and notice of each of the [asserted patents] and [defendants'] infringement thereof, through discussions with and presentations from [plaintiffs] and an infringement notice letter.'" *Intell. Ventures I LLC v. Toshiba Corp.*, 66 F. Supp. 3d 495, 499 (D. Del. 2014) (alterations in original) (citation omitted). This general reference to non-specific "presentations" was not enough in view of the plaintiff's large patent portfolio. *Id.* at 499-500. Here, the Amended Complaint identifies a specific

presentation that was viewed by FormFactor personnel showing the exact technology at issue in this case and expressly referencing that technology's patented status, while pleading additional supporting facts tipping the scales toward an inference of knowledge. *See* Amended Complaint, ¶¶ 26-27.

FormFactor also misses the point in alleging that "[n]or would FormFactor's participation in the semiconductor testing market give a plausible inference of its knowledge of infringement of any Technoprobe patent." Motion, 10. Again, the key question is not whether any individual allegation in the Amended Complaint by itself supports an inference of knowledge. The fact that FormFactor and Technoprobe are the two main competitors in a specialized market further supports the inference of knowledge based on the conference presentation cited in the Amended Complaint. *See, e.g.*, *Bio-Rad Lab'ys, Inc. v. 10X Genomics, Inc.*, No. 19-CV-12533-WGY, 2020 WL 2079422, at *5 (D. Mass. Apr. 30, 2020) (finding knowledge to be plausible in part based on the parties' "nature as competitors in a specialized market"); *Simplivity Corp. v. Springpath, Inc.*, No. 4:15-13345-TSH, 2016 WL 5388951, at *9 (D. Mass. July 15, 2016) (finding that the fact that the parties were market competitors, taken in combination with the other factual allegations, supported the inference of pre-suit knowledge).

### 3.    Technoprobe Is Not Required to Plead Other Egregious Acts

FormFactor also errs in alleging that "the Amended Complaint fails to allege any *facts* to support an inference that FormFactor's behavior was 'egregious' beyond 'typical' infringement." Motion, 15. FormFactor's assertion that there must be something more than the pled facts supporting Technoprobe's willful infringement claim is incorrect. This Court has previously considered "whether the complaint must allege additional facts, beyond knowledge of the patent and continuing infringement despite that knowledge, from which a finder of fact could conclude that the accused infringer's conduct was sufficiently egregious to support a willfulness finding."

14

*IOENGINE*, 2019 WL 330515, at \*7. And the Court concluded "that there is no requirement that the plaintiff plead additional facts, beyond knowledge of the patent or patents, in order for a claim of willful infringement to survive a motion to dismiss." *Id.*

In particular, "[s]ince the Supreme Court's decision in [*Halo*], courts in this district have held that is not necessary for the plaintiff to plead that the defendant has engaged in some form of egregious conduct in order to avoid dismissal on the pleadings." *Id.*; *see also Guardant Health, Inc. v. Found. Med., Inc.*, No. 17-1616-LPS-CJB, 2020 WL 5994155, at \*3 (D. Del. Oct. 9, 2020) ("[S]tating a claim for willful infringement . . . does not 'require that the patentee plead facts plausibly evidencing "egregious" infringement conduct.'" (citation omitted)). Moreover, requiring only a showing of knowledge at the pleading stage is logical because the "facts bearing on willfulness are likely to be, in large measure, in the possession of the defendant and available to the plaintiff only through discovery." *IOENGINE*, 2019 WL 330515, at \*8.

### B.   The Amended Complaint Sufficiently Pleads that FormFactor Made Literally False CCC Claims

Technoprobe's Amended Complaint duly pleads that FormFactor made a series of literally false claims regarding the current carrying capability ("CCC") of its own products versus those of its competitors, including Technoprobe. Amended Complaint, ¶¶ 20, 25, 32, 42-61.[2] In its pending motion, FormFactor seeks to dismiss the literally false portion of Technoprobe's false advertising count. Motion, 17 (asserting that "[t]he Amended Complaint fails to sufficiently plead that any of the Claims are literally false").

---

[2] In particular, the Amended Complaint alleges that FormFactor (1) presented customers with false and inaccurate values for the CCC of its own probe cards compared to the probe cards of its competitors, *id.*, ¶¶ 42-48; (2) falsely claimed that its probe cards "provide >50% improved CCC over current gen[eration] MEMS probes," *id.*, ¶¶ 49-54 (quoting Amended Complaint, Ex. E at 10); and (3) falsely claimed that its probe cards "[i]mprove[] [e]ffective CCC by 65%," *id.*, ¶¶ 55-61.

The allegations in Technoprobe's Amended Complaint far exceed its low pleading bar at this stage.[3] Under Federal Rule of Civil Procedure 8(a)(2), all that is required is "a short and plain statement of the claim showing that the pleader is entitled to relief," to "give the defendant fair notice of what the . . . claim is and the grounds upon which it rests." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citation omitted). A "complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations" because all that is required at the pleading stage is "enough facts to state a claim to relief that is plausible on its face." *Id.* at 555, 570.

Technoprobe's Amended Complaint meets (and far surpasses) this low threshold by spelling out the literal falsity of FormFactor's claims in painstaking detail. Amended Complaint, ¶¶ 42-61. As alleged, FormFactor's claims are literally false by virtue of the claims' plain language (*id.*), the claims' accompanying graphical depictions (*id.*, ¶¶ 42-43, 49, 56, collectively citing Ex. E at 5, 10, 23), and the context surrounding the claims (*id.*, ¶¶ 15-22, 25-36)—all of which convey FormFactor's superiority over its competitors, including Technoprobe.

### 1. The Meaning of the Disputed Claims Must Be Determined by the Factfinder

As an initial matter, FormFactor's motion errs by improperly asking the Court to construe the meaning of its claims without the benefit of even rudimentary discovery that will shed light on

---

[3] FormFactor asserts that the "heightened pleading standard" of Federal Rule of Civil Procedure 9(b) applies to Plaintiff's Lanham Act claims because Technoprobe's pleading purportedly "sounds in 'fraud or mistake.'" Motion, 7 (quoting Fed. R. Civ. P. 9(b)). FormFactor omits that this Circuit is tightly divided on whether Rule 9(b) is ever appropriate in Lanham Act cases. *See N.J. Physicians United Reciprocal Exch. v. Boynton & Boynton, Inc.*, 141 F. Supp. 3d 298, 307-08 (D.N.J. 2015) (applying an intermediate approach to Lanham Act claims), *and Synopsys, Inc. v. Magma Design Automation*, C.A. No. 05-701-GMS, 2006 WL 1452803, at *2-3 (D. Del. May 25, 2006) (applying Rule 8 to Lanham Act claim). In any event, the Amended Complaint would nevertheless also meet Rule 9(b), which merely requires the identification of the "who, what, when, where and how" of the alleged fraud. *Clorox Co. v. Reckitt Benckiser Grp. PLC*, 398 F. Supp. 3d 623, 634 (N.D. Cal. 2019); *see* Amended Complaint, ¶¶ 29-36 (who), ¶¶ 42-61 (what), ¶¶ 32-36 (when), ¶¶ 25, 32-36 (where), ¶¶ 42-61 (how).

how those claims are understood by the only audience that matters, i.e., the relevant universe of probe card purchasers and users. At this early stage, this Court need not "determine what claim was *actually conveyed* by the advertisements." *Clorox Co. P.R. v. Proctor & Gamble Commercial Co.*, 228 F.3d 24, 35 (1st Cir. 2000) (emphasis added). Instead, it "must evaluate whether the complaint, as supplemented by the advertising copy, alleges facts that would allow a rational factfinder to conclude that [defendant's] advertisements make a superiority claim either explicitly or by necessary implication." *Id.* Dismissal is only appropriate "if no reasonable factfinder could conclude that the advertisements, viewed in the light most favorable to [plaintiff], make a claim of . . . superiority for [defendant's] product." *Id.*; *accord U.S. Healthcare, Inc. v. Blue Cross*, 898 F.2d 914, 922 (3d Cir. 1990).

Contrary to FormFactor's argument, Technoprobe need not establish at this case-inception stage whether FormFactor's claims are susceptible to "only one plausible meaning." Motion, 17 (quoting *Parks, LLC v. Tyson Foods, Inc.*, No. 5:15-cv-00946, 2015 WL 4545408, at *8 (E.D. Pa. July 28, 2015)). Indeed, the single and only case FormFactor cites for its "only one plausible meaning" standard is *Parks*—a case involving a *preliminary injunction motion*. *Parks*, 2015 WL 4545408. There, the burden of proof rested on the plaintiff; here, it rests entirely on Defendant FormFactor. *Id.* at *10-11. Courts have held that, "given the fact-intensive nature of th[e] inquiry, . . . the issue of literal falsity is best left for the jury." *Aviva Sports, Inc. v. Fingerhut Direct Mktg., Inc.*, 829 F. Supp. 2d 802, 811 n.8 (D. Minn. 2011); *see also 3M Innovative Props. Co. v. Dupont Dow Elastomers LLC*, 361 F. Supp. 2d 958, 970 (D. Minn. 2005) ("Literal falsity is often a fact question reserved for the jury."); *cf. Clorox*, 228 F.3d at 35 ("[W]e are not required to determine what claim was actually conveyed by the advertisements because *we are not factfinders*."

(emphasis added)). FormFactor's motion must be denied because claim interpretation is a fact-intensive endeavor best handled by a factfinder.

Determining the takeaway of FormFactor's graphs and claims requires understanding how such materials are understood—not by the Court, but by probe card consumers themselves. Technoprobe's literal falsity claims cannot, therefore, be dismissed pre-discovery.

### 2. Technoprobe's Literal Falsity Claim Has Been Properly Pled

Contrary to FormFactor's contention, Technoprobe has properly and extensively alleged literal falsity far beyond the notice pleading hurdle under the Federal Rules. The Amended Complaint alleges literal falsity, as FormFactor's comparisons to "Previous Generation Probes" and "current gen. MEMS probes" are comparisons to "a broad, unlimited category that notably fails to exclude products made by competitors including Technoprobe." Amended Complaint, ¶¶ 3, 44. The Amended Complaint further alleges that the values shown in FormFactor's charts are literally false. *See id.*, ¶ 42.

As alleged, the literal falsity of FormFactor's CCC claims are particularly stark when viewed in context. The chart below, for example (as annotated in red by Technoprobe), depicts dark blue bars that refer specifically to **F**orm**F**actor **I**nc. MT Probes (i.e., **FFI** MT Probes). *Id.*, ¶¶ 43-44, Ex. E at 10. By contrast, the chart's light blue bars refer generically and without qualification to all "Previous Generation Probes"—a designation that includes by virtue of not excluding, competitors including Technoprobe. *Id.* The resolution of such contested issues should be determined at trial and not a Rule 12 motion.

18



*Id.* (annotated).

FormFactor quibbles that "Technoprobe cannot allege that the Presentation referenced Technoprobe at all." Motion, 17. But Technoprobe need not allege that Technoprobe was mentioned *by name*. *See Castrol Inc. v. Pennzoil Co.*, 987 F.2d 939, 952-55 (3d Cir. 1993) (finding that a "longer engine life and better engine protection" claim targeted competitors even without explicitly mentioning them). And while findings of literal falsity are best left to a factfinder, the Third Circuit's *Castrol* holding leaves no ambiguity that referencing a competitor by name is *not* required to demonstrate literal falsity, let alone *plead* it. Whether or not "Technoprobe" is explicitly referenced by name, the Amended Complaint sufficiently alleges that the broad categories of "Previous Generation Probes" and "Current Gen[eration] Probes" include *all* previous and current generation probes. Not even FormFactor denies that Technoprobe— FormFactor's biggest competitor—makes both.

Aside from being literally false as a matter of plain language, the Amended Complaint alleges that FormFactor's disputed claims are literally false by virtue of their context. One important piece of context is probe card market share. As alleged, Technoprobe is FormFactor's largest competitor in the probe card industry. Amended Complaint, ¶ 20. This relationship only

increases the likelihood that a consumer will consider Technoprobe to be a target of FormFactor's comparative claims. *See Time Warner Cable, Inc. v. DIRECTV, Inc*., 497 F.3d 144, 162-63 (2d Cir. 2007) (finding irreparable injury from inaccurate open-ended product claims where "plaintiff is an obvious competitor with respect to the misrepresented product" (citation omitted)).[4]

Further relevant context, also alleged, stems from the competitive nature of FormFactor's presentation more entirely. For example, slide 23 of the presentation boasts that FormFactor offers "the *first*" probe card with a CCC above 3 amps, *which is itself another reference to competitors*. *See* Amended Complaint, ¶ 45 (emphasis added) (quoting Ex. E at 23). More generally, the SWTest 2023 conference is a fundamentally competitive event where competing manufacturers aim to distinguish and sell their products to probe card customers. *Id.*, ¶ 25. These customers are acutely aware of competition between FormFactor and Technoprobe (*id.*, ¶ 20) and will, as alleged, view FormFactor's CCC claims within the context of that competition and rivalry.

Based on the alleged facts, which must be taken as true for this motion, a reasonable factfinder could conclude FormFactor's claims are literally false. Technoprobe has met the low bar for pleading literal falsity at this case-inception stage. *See Clorox*, 228 F.3d at 35.

V.   CONCLUSION

For the foregoing reasons, Technoprobe respectfully requests that the Court deny FormFactor's partial motion to dismiss.

---

[4] FormFactor suggests in a footnote that its quantitative assertions (such as ">50% Improved CCC") cannot be literally false because its graphs *show* that the claim is not true. Motion, 19 n.5. But none of its cited cases support its confusing position; each dealt with facts where a claim was *supported* by the context surrounding the claim to establish that it *was* literally true. *See, e.g.*, *Checker CAB Phila., Inc. v. Uber Techs., Inc.*, No. 14-7265, 2016 WL 950934, at *7 (E.D. Pa. Mar. 7, 2016) (challenged "at least 20% cheaper" claim was supported by "sample pricing costs"), *aff'd*, 689 F. App'x 707 (3d Cir. 2017). Here, by contrast, FormFactor's cited context shows only that its probes *do not* have ">50% Improved CCC." *See* Motion, 19 n.5; Amended Complaint, ¶¶ 49-50.

/s/ Andrew E. Russell
Andrew E. Russell (No. 5382)
SHAW KELLER LLP
I.M. Pei Building
OF COUNSEL:                                1105 North Market Street, 12th Floor
Mark Sommers                               Wilmington, DE 19801
Houtan K. Esfahani                         (302) 298-0700
John C. Paul                               arussell@shawkeller.com
Jennifer E. Fried                          *Attorneys for Plaintiff Technoprobe S.p.A.*
Ahbay A. Watwe
Kelly S. Horn
Alexander E. Harding
FINNEGAN, HENDERSON, FARABOW,
  GARRETT & DUNNER, LLP
901 New York Avenue, NW
Washington, DC  20001-4413
(202) 408-4000

Dated: December 6, 2023